**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PARADIGM TRANSPORTATION, LLC, et.al., | ) |
| | ) |
| Plaintiff, | ) |
| | )    Civil Action No. 23-382 |
| v. | ) |
| | ) |
| SFV LOGISTICS, LLC AND | ) |
| STEPHEN F. VELAZQUEZ, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

I.    Introduction

Presently before the Court is a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction over Defendant Stephen Velazquez and for Failure to State a Claim (Docket No. 10) against Velazquez and coDefendant SFV Logistics, LLC ("SFV"). The motion is fully briefed (Docket Nos. 11, 23 and 24) and is ripe for decision. For the reasons explained below, the motion will be denied.

II.    Factual and Procedural Background

The Court will briefly summarize only those facts necessary to analyze the pending motion. Plaintiffs (collectively referred to herein as "Paradigm") explain that this case arises out of a series of misrepresentations made by both SFV and Velazquez in his individual capacity[1] regarding their intent to provide freight agent services and deploy drivers for Conestoga trailers that SFV and Velazquez induced Paradigm to acquire. Complaint ¶ 1. SFV is a motor truck transportation and

---

[1]    In their response brief, Defendants represent that SFV is a sole member LLC run and controlled by Velazquez. (Docket No. 11 at 1). The Paradigm parties are Pennsylvania LLCs. Because Velazquez (and therefore SFV) is a citizen of Illinois, and the Paradigm parties are citizens of Pennsylvania, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

freight logistics services company with knowledge and experience in the logistics industry. Complaint ¶ 13. Velazquez is a motor truck transportation and freight logistics services professional with knowledge and experience in the logistics industry. Complaint ¶ 15.

The parties entered discussions in June 2021 about SFV and Velazquez transitioning their freight agent business to Paradigm. Complaint ¶ 19. Paradigm would invest in Conestoga trailers to be utilized by drivers with whom SFV and Velazquez had prior professional relationships. Complaint ¶ 19. SFV and Velazquez represented they would achieve and sustain $500,000 or more in monthly revenue in providing freight agent services on behalf of Paradigm; they had drivers ready to be deployed to utilize 40-55 Conestoga trailers to support customer relationships for which SFV and Velazquez would service as a freight agent; and the drivers would average $5,000-$7,000 in weekly revenue, which would cover the cost of the trailers. Complaint ¶ 2.

SFV and Velazquez made these representations to Paradigm initially to induce Paradigm to enter into an Agency Agreement[2] and induce Paradigm to acquire Conestoga trailers for SFV. Complaint ¶¶ 3, 21. SFV and Velazquez made the representations knowing that they did not have enough drivers to utilize 10 trailers, let alone 40-55 trailers. Unbeknowst to Paradigm, SFV and Velazquez needed the trailers to meet their contractual obligations to other customers. Complaint ¶ 4. SFV and Velazquez induced Paradigm to acquire the trailers in an attempt to meet those contractual obligations to other customers. Complaint ¶ 29.

Paradigm relied, in good faith, on SFV's and Velazquez's initial performance under the Agency Agreement and ability to deploy drivers and acquired 40 Conestoga trailers for SFV and Velazquez at a cost of $2,247,097. Complaint ¶¶ 5, 26. In June 2022, SFV drastically reduced the freight agent services it provided. Complaint ¶ 33. When it became clear that SFV and Velazquez

---

[2] The Agency Agreement is attached as an exhibit to the Complaint (Docket No. 1-2). Velazquez signed the Agreement on behalf of SFV, but he is not a party to the Agreement.

did not have enough drivers, Paradigm demanded that they pay the cost of the trailers.  In August 2022, SFV and Velazquez completely stopped performing services.  Paradigm contends that Defendants constructively terminated the Agency Agreement and Paradigm suffered over $1,000,000 in damages.  Complaint ¶¶ 6-7, 39.

The Complaint asserts the following claims:  (1) (against SFV only) breach of the Agency Agreement; (2) (both defendants) breach of oral contract with respect to deploying drivers to utilize the trailers acquired by Paradigm; (3) (both defendants) promissory estoppel; (4) (both defendants) fraud/fraud in the inducement to enter into the Agency Agreement and to buy the 40 trailers; and (5) (both defendants) negligent misrepresentation.

In response to the motion to dismiss, Paradigm submitted a declaration from John Gallardo, the president of the Plaintiff entities (Docket No. 23-1).  Gallardo avers that Velazquez, acting individually and on behalf of SFV, made the misrepresentations set forth in the Complaint in a series of in-person meetings in Pittsburgh, Pennsylvania; and in telephone calls, emails and text messages to persons at Paradigm in Pittsburgh, between March 2021 and April 2022.  ¶ 14.  Many of the communications were attached to the declaration.  Gallardo participated in a number of in-person meetings in Pittsburgh, in which misrepresentations were made.  ¶ 17.  Velazquez did not distinguish between his personal and SFV roles and frequently discussed "his personal relationships with his customers and drivers and his personal ability to ensure that SFV would meet its contractual obligations.  ¶ 18.  Velazquez did not submit a declaration.  Defendants did not controvert any of the facts set forth in the Gallardo declaration.

III.  Discussion

A.  General principles for personal jurisdiction

Paradigm asserts only specific, not general, personal jurisdiction. Velazquez challenges this Court's authority to exercise personal jurisdiction over him in his individual capacity. SFV does not challenge personal jurisdiction. As noted, Paradigm filed a declaration. The facts set forth in the declaration were not challenged and will be regarded as true for the purpose of this opinion.

In *Stewart v. Stuckey-Smith*, No. CV224553SDWMAH, 2022 WL 17069966 (D.N.J. Oct. 28, 2022), report and recommendation adopted, No. 22-04553 (SDW)(MAH), 2022 WL 17069697 (D.N.J. Nov. 17, 2022), the Court summarized the applicable standard:

> plaintiff bears the burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over the moving party. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *DePaco v. Cofina Media, SA*, No. 21-14409, 2022 WL 3646616, at *2 (D.N.J. Aug. 24, 2022). If the court does not hold an evidentiary hearing on the motion to dismiss, as is the case here, the plaintiff need only establish a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Unlike a motion to dismiss for failure to state a claim, a plaintiff may not rely solely on pleadings for contests of personal jurisdiction, but must establish jurisdictional facts through sworn affidavits or other competent evidence.

*Id.* at *4. Personal jurisdiction is analyzed for each defendant, for each claim. *Stewart*, 2022 WL 17069966 at *5 ("a court analyzes specific personal jurisdiction on a defendant-by-defendant and claim-by-claim basis") (citations omitted).

On September 5, 2024 (after the briefing in this case was completed), the United States Court of Appeals for the Third Circuit issued a precedential decision in *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), which sets forth the applicable analysis of personal jurisdiction. The Court in *Hasson* reviewed the general principles governing specific personal jurisdiction:

> Specific jurisdiction exists when the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). A district court sitting in diversity can exercise personal jurisdiction over an out-of-state defendant to the extent permitted by the law of the forum state. *Metcalfe v. Renaissance Marine, Inc.*, 566

4

F.3d 324, 330 (3d Cir. 2009); *see also* Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute permits personal jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).

The Supreme Court has articulated two tests for specific jurisdiction: (1) the "traditional" test—also called the "minimum contacts" or purposeful availment test, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); and (2) the "effects" test, *see Calder v. Jones*, 465 U.S. 783, 787 & n.6, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

*Hasson*, 114 F.4th at 186.

Under the traditional test, the plaintiff must show: (1) the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and "invoke[ed] the benefits and protections of [the forum's] laws"; (2) the plaintiff's claims must "arise out of or relate to" at least some of those contacts, evidencing "a strong relationship among the defendant, the forum, and the litigation"; and (3) the exercise of jurisdiction over the defendant must "comport[ ] with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Id.* (citations omitted).

The *Calder* "effects" test "requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Id.* at 187. The Court explained that the effects test and traditional test have distinct requirements and both tests should be considered. *Id.* at 189.

### B. Fiduciary Shield Doctrine

Velazquez's primary argument is that he was acting only in his capacity as the representative of SFV, and therefore, is not subject to this Court's jurisdiction in his personal

capacity (Docket No. 24 at 2) (citing *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 676 (E.D. Pa. 1997) and *Waimberg v. Med. Transp. of Am., Inc.*, 52 F. Supp. 2d 511, 517 (E.D. Pa. 1999)).  Those decisions do not help Velazquez -- in both cases, the courts exercised personal jurisdiction over the individual corporate actor.[3]

In *Elbeco*, the Court summarized the "fiduciary shield doctrine":

> Generally, individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts. However, a recognized exception to this general rule is that **a corporate agent may be held personally liable for torts committed in their corporate capacity**. The courts recognizing this exception allow personal jurisdiction in such circumstances so the corporate defendant will not be able to use a corporate shield to protect himself from suit in the forum.  *See also Maleski*, 653 A.2d at 63 (stating "unless jurisdiction is obtained over those corporate officers engaged in tortious conduct, they will merely repeat the conduct over and over in other corporate guises").

> In order to determine whether the corporate officer will be subject to personal jurisdiction, the following factors should be examined: [1] the officer's role in the corporate structure, [2] the quality of the officers's contacts, and [3] the extent and nature of the officer's participation in the alleged tortious conduct.  An analysis of these factors will determine if the defendant's contacts with the forum related to the corporate capacity may be considered in deciding if he should be subject to personal jurisdiction in an individual capacity.

989 F. Supp. at 676 (emphasis added) (citations and punctuation omitted).

In this case, the considerations weigh heavily in favor of exercising jurisdiction.  First, Velazquez has a dominant role in the corporate structure, as the sole owner and actor in SFV. Second, the quality of his contacts is high, with numerous communications directed at Pennsylvania and personal travel to Pennsylvania.  Third, the extent and nature of his participation

---

[3]      Defendants' reliance on *Thar Process, Inc. v. Sound Wellness, LLC*, No. CV 20-945, 2021 WL 1110572 (W.D. Pa. Mar. 23, 2021) is also misplaced because in *Thar*, "there [were] no allegations that Mr. Barnhart engaged in tortious conduct in Pennsylvania or directed at Pennsylvania."  *Id.* at *3.  Similarly, in *Hardwick v. Consumer Guardian Specialists, LLC*, No. 2:20-CV-00060, 2021 WL 1152739, at *7 (W.D. Pa. Mar. 26, 2021), there were "no contacts" between the individual and Pennsylvania.

in the alleged tortious conduct is high because he is alleged to have personally made misrepresentations.

Defendants argue that the "tort" exception to the fiduciary shield doctrine does not apply, asserting that the claims in this case "do not properly sound in tort."[4]  (Docket No. 24 at 2).  The Court disagrees.  The Complaint in this case clearly asserts claims against Velazquez in his individual capacity for, among other things, fraud, fraud in the inducement, and negligent misrepresentation.

*Elbeco* involved a factually similar situation in which the plaintiff alleged that the defendants, in their corporate capacities, repeatedly misrepresented their ability to meet the demands of the contract and that timely deliveries under the contract would be made.  The plaintiff relied on these representations in both agreeing to the contractual terms and when the contractual obligations were not being met.  *Id.*  The Court found "that the contacts between the individual defendants and Pennsylvania are sufficient minimum contacts to exercise personal jurisdiction."  *Id.* at 677.  The Court noted that the individual defendants purposefully directed the alleged misrepresentations to a Pennsylvania corporation; had a series of misrepresentations with a Pennsylvania corporation for approximately one year; purposefully reached into Pennsylvania through telephone and mail communications; and two of the individual defendants visited Pennsylvania and allegedly made misrepresentations while present in the forum.  *Id.*

In *Waimberg,* the Court held that personal jurisdiction existed over an individual defendant because he was alleged to have engaged in tortious behavior by acting personally and purposefully to convince a corporate defendant to rescind its offer to the plaintiff, who was located in Pennsylvania, even though the defendant never came to Pennsylvania.  52 F. Supp. 2d at 517.  The

---

[4]        The Court will address Defendants' "gist of the action" argument below.

Court emphasized that, at this stage, it was required to resolve factual disputes in favor of the plaintiff. *Id.*

The same result is appropriate here. Paradigm met its burden to establish a *prima facie* case for personal jurisdiction. Paradigm alleges that Velazquez, acting both as the principal of SFV and in his personal capacity, made repeated misrepresentations over a period of one year, which were purposefully directed at Pennsylvania entities. Paradigm alleges that Velazquez touted his personal contacts with truckers and his personal ability to ensure that SFV met its obligations. Some of the misrepresentations were made while Velazquez was physically present in Pennsylvania to negotiate with Paradigm. Paradigm's claims against Velazquez in Counts 2-5 arise directly from those misrepresentations. The Court notes that Paradigm did not name Velazquez as a defendant for the breach of contract claim in Count 1.

Under the traditional test, Velazquez had sufficient minimum contacts and purposely availed himself of the Pennsylvania market, the claims arise directly from those contacts and the exercise of jurisdiction is consistent with fair play and substantial justice. Indeed, SPV does not contest jurisdiction. Under the effects test, Velazquez expressly aimed the harm at Pennsylvania entities and committed some portion of the intentional torts while in Pennsylvania. To repeat, the Gallardo declaration avers that Velazquez personally made tortious misrepresentations while meeting with him in Pennsylvania.

Velazquez's motion to dismiss for lack of personal jurisdiction will be denied.

### C. Motion to Dismiss for Failure to State a Valid Claim

Defendants also seek dismissal of the Complaint in its entirety for failure to state a cognizable claim. With respect to the breach of contract claim against SFV in Count 1, Defendants concede that a contract exists, but argue that Paradigm failed to plead a valid breach or damages.

Defendants deny that their dramatic reduction of services in June 2022 constitutes a constructive termination of the contract and point to the "Limitation of Damages" clause at § 5.1 of the Agency Agreement. Defendants contend that the remaining claims are barred by the parol evidence rule because the Agency Agreement has an integration clause, § 16.2.

Paradigm responds that the Complaint properly pleads the elements of all claims, supported by factual averments that must be taken as true at this stage of the case. Paradigm also explains that the parol evidence rule does not apply because many of the fraudulent/negligent misrepresentations were made *after* the Agency Agreement was executed and were intended to induce Paradigm to buy the 40 trailers.

Defendants assert that Paradigm's claims sound only in contract under the "gist of the action" doctrine (Docket No. 24 at 3). The Court disagrees. The "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims" and "precludes a plaintiff from recasting ordinary breach of contract claims into tort claims." *Howe v. LC Philly, LLC*, No. CIV.A. 10-5495, 2011 WL 1465446, at *4 (E.D. Pa. Apr. 15, 2011). There is a recognized "exception to the gist of the action doctrine where claims of fraud in the inducement of the contract are alleged, as opposed to fraud in the performance of the contract." *Id.* The gist of the action doctrine also does not bar negligent misrepresentation claims. *Id.* at *5. *Howe* involved similar allegations about fraudulent or negligent misrepresentations made to induce the plaintiff to enter into a contract. The Court held that those tort claims would not be dismissed under the "gist of the action" doctrine. The same result is appropriate here.

The Court concludes that the Complaint pleads cognizable claims. Even if certain claims could be more robustly pleaded, the Court would "freely give" Paradigm leave to amend. *See* Fed. R. Civ. P. 15. The Court notes that the fact discovery deadline is March 19, 2025. Defendants

may renew their challenges to the claims at the summary judgment stage based on a fully developed factual record. *See* Docket No. 24 at 9 n.2 (Defendants recognize that fraudulent and negligent misrepresentation, gist of the action and parol evidence issues may be appropriate for resolution at the summary judgment stage).

IV.    Conclusion

For the reasons set forth above, the motion to dismiss (Docket No. 10) will be denied.

An appropriate order will be entered.

Dated: January 31, 2025

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge


cc/ecf:  All counsel of record